

FILED by _____ KS _____ D.C.

May 6, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 21-60124-CR-SMITH/VALLE
### CASE NO. _____

18 U.S.C. § 1349
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1957(a)
18 U.S.C. § 371
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)
18 U.S.C. § 982(a)

**UNITED STATES OF AMERICA**

**vs.**

**MARK LOUIS VOLLARO,**
**ANTHONY JOSEPH LOVELAND,**
**LUIS GARCIA,**
**ROBERT CHARLES CLARK,**
**JASON TODD FALEY,**
**JOSEPH ANTHONY CAVALLO,**
**MARGARET ANNE CHIASSON,**
    **a/k/a "Meganne Chiasson,"**
**JAMES DONALD ENGIMANN,**
**BENJAMIN CLARK HEATH,**
**ANTONIO JOHN GOUSGOUNIS, and**
**CHRISTOPHER MARGAIT,**

        **Defendants.**

_____

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### Compounded Medications

1.    A compounded medication was a drug product that was a customized combination

of ingredients that was issued by a physician to his or her patient to accommodate specialized and particularized needs of the patient. A compounded medication took into consideration the particular patient's diagnoses, medical condition, individual health factors, and reactions to other medications. A compounded medication was only prescribed after a medical professional determined that commercially available medications were not as beneficial or might be inappropriate or harmful to the patient. The ingredients of each compounded medication were combined by a pharmacist in the exact strength and dosage required by an individual patient. Compounded medications were generally much more expensive than mass-produced prescription medications.

2.      Medical professionals issuing valid prescriptions for compounded medications were required to take into consideration the specific criteria for each patient including: age, weight, physical condition, symptoms, medical history, and tolerance of medications. Medical professionals were also required to take into consideration the side effects and contra-indications of combining multiple medications into a single dose of a specially prepared compound.

3.      A valid prescription for a compounded medication was initiated and issued by a physician, prepared by participating pharmacies, and billed to private and government health insurance plans.

4.      Because compounded pharmaceuticals were custom made to fit the unique needs of each patient, the U.S. Food and Drug Administration did not regulate or approve compounded medications. Therefore, the U.S. Food and Drug Administration also did not verify the safety or effectiveness of compounded medications. Due to the unique and individualized nature of compounded medications, such medications were neither commercially available nor distributed

in mass quantities.

## Insurance Reimbursements

5.      Tricare was a health care program of the United States Department of Defense, Military Health System that provided coverage for military beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.   Tricare was a "Federal health care program" as defined by 42 U.S.C. §§ 1320a-7b(f), which affected interstate commerce.   Tricare provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician.

6.      Health care plans sponsored by private employers were governed by the Employment Retirement Income Security Act of 1974 ("ERISA").   These private employer health care plans offered health insurance benefits to individuals pursuant to contracts between the plans and health care providers.   The contracts specify the reimbursement for the agreed health care services provided therein.   The private employer health care plans reimburse health care service providers, including pharmacies, for the cost of goods and services, pursuant to the terms of the contracts, and consistent with state law, (private employer health care plans along with Tricare hereinafter collectively referred to as the "Insurance Plans").

7.      Insurance Plans delegate the processing of the claims for reimbursement for their participants' prescriptions to Pharmacy Benefit Managers.   Two of the Pharmacy Benefit Managers that handle prescription plans were CVS/Caremark and Express Scripts. CVS/Caremark was located in Woonsocket, Rhode Island, and its computer servers, which assist in handling the information transmitted by wire for the processing of the payments for the

prescriptions, were located in Arizona.   Express Scripts was located in St. Louis, Missouri, and its computer servers were located in New Jersey.   As set forth below, the necessary information regarding the fulfillment of the prescription and the request for payment was wired from a pharmacy to one of these two Pharmacy Benefit Managers for processing.

8.       Under the terms of the insurance policies and consistent with state and federal law, the Insurance Plans were only responsible to reimburse for claims for services that: (a) were "medically necessary" and actually rendered, (b) were provided by a properly licensed service provider, and (c) complied with the terms of the Insurance Plans.

### The Defendant and Related Entities

9.       USA Healthcare Inc. (hereinafter "USA Healthcare") was a Florida corporation located at 3350 N.W. Boca Raton Boulevard, Suite #A6, Boca Raton, Florida. USA Healthcare was incorporated in or around February 2014.

10.       RX Health Pros, Inc. (hereinafter "RX Health Pros") was a successor entity to USA Healthcare and was located at 40 S.E. 5th Street, Suite #405, Boca Raton, Florida.   RX Health Pros was incorporated in or around April 2015.

11.       Complete Healthcare Concierge Inc. (hereinafter "CHC") was a Florida corporation located at 1901 S. Congress Avenue, Suite 150, Boynton Beach, Florida.   CHC was incorporated in or around June 2013.

12.       RX Connections, LLC (hereinafter "RX Connections") was a Florida Limited Liability Company located at 600 Fairway Drive, Suite 207, Deerfield Beach, Florida.   RX Connections was registered in or around January 2015.

4

13.     RX Health Services Inc., (hereinafter "RX Health Services") was a Florida corporation located at 1489 W. Palmetto Park Road, #332, Boca Raton, Florida.   RX Health Services was incorporated in or around October 2014.

14.     Clinical Solutions LLC (hereinafter "Clinical Solutions") was a Florida limited liability company located at 541 N.E. 45th Street, Pompano Beach, Florida.   Clinical Solutions was registered in or around February 2015.

15.     T J M Holdings Inc. (hereinafter "TJM Holdings") was a Florida corporation located at 1489 W. Palmetto Park Road, #332, Boca Raton, Florida.   TJM Holdings was incorporated in or around February 2015.

16.     Capital Advisor Group LLC (hereinafter "Capital Advisor Group") was a Florida Limited Liability Company located at 8401 Lake Worth Road, #212, Lake Worth, Florida. Capital Advisor Group was incorporated in or around October 2015.

17.     Defendant **ANTHONY JOSEPH LOVELAND**, a resident of Boynton Beach, Florida, was a beneficial owner of USA Healthcare, and the president of USA Healthcare until approximately December 19, 2014.

18.     Defendant **LUIS GARCIA,** a resident of Boca Raton, Florida, was president of USA Healthcare after December 19, 2014, and president of RX Health Pros.

19.     Defendant **MARK LOUIS VOLLARO**, a resident of Boynton Beach, Florida, was the Chief Executive Officer for CHC.

20.     Defendant **JASON TODD FALEY**, a resident of Deerfield Beach, Florida, was the Chief Operating Officer for CHC.

21.     Defendant **BENJAMIN CLARK HEATH**, a resident of Boca Raton, Florida, was an authorized member of RX Connections.

22.     Defendant **ANTONIO JOHN GOUSGOUNIS**, a resident of Boca Raton, Florida, was the president of RX Health Services and TJM Holdings.

23.     Defendant **MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson,"** a resident of Quincy, Massachusetts, was the manager and registered agent for Clinical Solutions and a vice president of TJM Holdings.

24.     Defendant **JOSEPH ANTHONY CAVALLO**, a resident of Cooper City, Florida, was a vice president of TJM Holdings.

25.     Defendant **ROBERT CHARLES CLARK** was a resident of Boca Raton, Florida.

26.     Defendant **JAMES DONALD ENGIMAN,** a resident of Lake Worth, Florida, was the registered agent and an authorized member of Capital Advisor Group.

27.     Defendant **CHRISTOPHER MARGAIT** was a resident of West Palm Beach, Florida, and a manager of Capital Advisor Group.

## COUNT 1
(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

1.     Paragraphs 1 through 11, 14, 15, 17 through 20, and 23 through 25 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     Beginning at least as early as in or around January 2014, the exact date being unknown to the Grand Jury, and continuing through at least on or about May 25, 2016, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**MARK LOUIS VOLLARO,**
**ANTHONY JOSEPH LOVELAND,**

**LUIS GARCIA,**
**ROBERT CHARLES CLARK,**
**JASON TODD FALEY,**
**JOSEPH ANTHONY CAVALLO, and**
**MARGARET ANNE CHIASSON,**
**a/k/a "Meganne Chiasson,"**

did willfully, that is, with intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and, for the purpose of executing such scheme, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

3.      It was the object of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by among other things: (1) recruiting individuals who were insured by the Insurance Plans to serve as patients of various compounding pharmacies; (2) creating and causing the creation of fraudulent prescriptions for compounded medications which were not medically necessary and not properly issued based on a valid physician-patient relationship; (3) submitting and causing the submission of fraudulent claims to the Insurance Plans; (4) concealing the submission of fraudulent claims; and (5) distributing the fraud proceeds among themselves for their personal use and benefit, the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included the following:

4.     **ANTHONY JOSEPH LOVELAND, LUIS GARCIA** and their co-conspirators owned and operated USA Healthcare, a company in the business of recruiting Insurance Plan beneficiaries to receive prescriptions for compounded medications that were medically unnecessary. In exchange for referring the beneficiaries and their prescriptions to pharmacies which billed the Insurance Plans, the co-conspirators received a portion of the illicit profits for each prescription generated as a result of their efforts.

5.     **ROBERT CHARLES CLARK** sold co-conspirators at USA Healthcare lists of potential patient information, including names, dates of birth, social security numbers, and individual identification numbers for insurance plans, which the co-conspirators used to solicit patients to obtain unnecessary compounded medications. **CLARK** also received commissions for patients he had identified for USA Healthcare.

6.     **JOSEPH ANTHONY CAVALLO** and **MARGARET ANNE CHIASSON,** a/k/a "Meganne Chiasson," worked for USA Healthcare. In furtherance of the conspiracy, **CHIASSON** created and caused to be created prescription pads which listed medically unnecessary compound drug formulas that maximized the reimbursements from the Insurance Plans without regard for the true therapeutic value of the drugs. **CAVALLO** and **CHIASSON** distributed the prescription pads to their co-conspirators who used them to generate false and fraudulent prescriptions for the Insurance Plan beneficiaries they recruited.

7.     As part of the scheme, **ANTHONY JOSEPH LOVELAND, LUIS GARCIA,**

**JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson,"** and their co-conspirators referred recruited Insurance Plan beneficiaries with pre-printed prescriptions to a telemedicine company, such as CHC, or another medical professional in order to generate signed prescriptions for compounded medications that were medically unnecessary and designed to maximize payouts by the Insurance Plans. **LOVELAND, GARCIA, CAVALLO, CHIASSON,** and their co-conspirators, through USA Healthcare, paid for the cost of the telemedicine consultations.

      8.    **MARK LOUIS VOLLARO** and **JASON TODD FALEY** owned and operated CHC, a telemedicine company, which purportedly provided medical services via telephone to individuals for the purpose of prescribing compounded medications. USA Healthcare and co-conspirators **ANTHONY JOSEPH LOVELAND, LUIS GARCIA, JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson,"** provided **VOLLARO** and **FALEY** with patient information and pre-printed prescriptions in order to schedule the beneficiaries for supposed telemedicine consultations and to generate false, fraudulent and medically unnecessary prescriptions for compounded medications.

      9.    Based on the false, fraudulent and medically unnecessary prescriptions, **MARK LOUIS VOLLARO, ANTHONY JOSEPH LOVELAND, LUIS GARCIA, ROBERT CHARLES CLARK, JASON TODD FALEY, JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson,"** caused to be submitted false and fraudulent claims to the Insurance Plans, via interstate wire communications. Once the Insurance Plans paid for the medication, the co-conspirators received a set percentage of the insurance payments from the pharmacies.

10.     **ANTHONY JOSEPH LOVELAND, LUIS GARCIA**, and their co-conspirators entered into agreements with compounding pharmacies to receive a kickback from the pharmacies for each prescription referral for the medically unnecessary compounded medications. These kickback payments could be as much as 40% to 50% of the payments the pharmacy received from the Insurance Plans.    **LOVELAND, GARCIA** and other co-conspirators also entered an agreement with **MARK LOUIS VOLLARO** and **JASON TODD FALEY** to pay them a kickback payment of ten percent of the insurance payments generated from the prescriptions.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 2
(Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349)

1.     Paragraphs 1 through 8, 11 through 17, 19 through 24, 26, and 27 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     Beginning at least as early as in or around January 2014, the exact date being unknown to the Grand Jury, and continuing through at least on or about December 29, 2016, in Broward and Palm Beach Counties, in the Southern District of Florida and elsewhere, the defendants,

**MARK LOUIS VOLLARO,
ANTHONY JOSEPH LOVELAND,
JASON TODD FALEY,
JOSEPH ANTHONY CAVALLO,
MARGARET ANNE CHIASSON,
a/k/a "Meganne Chiasson,"
JAMES DONALD ENGIMAN,
BENJAMIN CLARK HEATH,
ANTONIO JOHN GOUSGOUNIS, and
CHRISTOPHER MARGAIT,**

did willfully, that is, with intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and, for the purpose of executing such scheme, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds in violation of Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

3.      It was the object of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by among other things: (1) recruiting individuals who were insured by the Insurance Plans to serve as patients of various compounding pharmacies; (2) creating and causing the creation of fraudulent prescriptions for compounded medications which were not medically necessary and not properly issued based on a valid physician-patient relationship; (3) submitting and causing the submission of fraudulent claims to the Insurance Plans; (4) concealing the submission of fraudulent claims; and (5) distributing the fraud proceeds among themselves for their personal use and benefit, the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included the following:

4.      **MARK LOUIS VOLLARO** and **JASON TODD FALEY** owned and operated

CHC, a telemedicine company, which purportedly provided medical services via telephone to individuals. **VOLLARO, FALEY** and their co-conspirators used CHC to submit false and fraudulent prescriptions to the Insurance Plans for compounded medications that were medically unnecessary and designed to maximize profit from claims to the Insurance Plans. Marketers, including co-conspirators, **ANTHONY JOSEPH LOVELAND, JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," ANTONIO JOHN GOUGOUNIS, JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH,** and **CHRISTOPHER MARGAIT**, provided **VOLLARO** and **FALEY** with patient information for supposed telemedicine consultations that generated the false and fraudulent prescriptions.

5.    **ANTHONY JOSEPH LOVELAND, MARK LOUIS VOLLARO,** and **JASON TODD FALEY** agreed to pay marketers, including co-conspirators, **JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," ANTONIO JOHN GOUGOUNIS, JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH,** and **CHRISTOPHER MARGAIT**, for soliciting beneficiaries of the Insurance Plans to order expensive and medically unnecessary compound medications. As marketers, **JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," ANTONIO JOHN GOUGOUNIS, JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH,** and **CHRISTOPHER MARGAIT**, received a portion of the profits from any false and fraudulent prescriptions that were generated as a result of their efforts. The payment would be an agreed upon percentage of the insurance payment collected on the fraudulent prescriptions.

6.    **JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson"** and **JASON TODD FALEY** created and caused to be created prescription

pads which identified specific medical conditions and prescribed compounded medications to treat those conditions.  **CAVALLO, CHIASSON,** and **FALEY** manipulated the type of ingredients and the concentration of those ingredients in the compounded medications on the pre-printed prescription pads in order to maximize the reimbursements from the Insurance Plans without regard for the true therapeutic value of the medications.   These "prescription pads" were distributed by **CAVALLO, CHIASSON,** and **FALEY** to be used by marketers to begin the process of obtaining a purportedly valid order from a physician for a compounded medication.

7.   **ANTHONY JOSEPH LOVELAND, MARK LOUIS VOLLARO, JASON TODD FALEY, ANTONIO JOHN GOUGOUNIS, JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH,** and **CHRISTOPHER MARGAIT** and their co-conspirators entered into agreements with compounding pharmacies to receive kickbacks from the pharmacies based upon the amount of payments received from the Insurance Plans for the medically unnecessary compounded medications.

8.   **MARK LOUIS VOLLARO, ANTHONY JOSEPH LOVELAND, LUIS GARCIA, ROBERT CHARLES CLARK, JASON TODD FALEY, JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson,"** submitted and caused to be submitted false and fraudulent claims to the Insurance Plans, via interstate wire communications, falsely and fraudulently representing that the compounded medications were medically necessary and the result of a legitimate doctor-patient relationship.   Once the Insurance Plans paid for the medication, the co-conspirators received a set percentage of the insurance payments from the pharmacies.

9.   **MARK LOUIS VOLLARO, JASON TODD FALEY, ANTHONY JOSEPH**

LOVELAND, **JOSEPH ANTHONY CAVALLO,** and **MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson,"** concealed the fraud proceeds by distributing the payments from the Insurance Plans through corporations and limited liability companies owned and controlled by **JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH, CHRISTOPHER MARGAIT, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson,"** and **ANTONIO JOHN GOUGOUNIS.**

All in violation of Title 18, United States Code, Section 1349.

### COUNT 3
(Conspiracy to Launder Monetary Instruments - 18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 8, 11 through 16, 19, 21 through 24, 26 and 27 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or about 2014, through in or around July 2016, in Broward and Palm Beach Counties, in the Southern District of Florida and elsewhere, the defendants,

**MARK LOUIS VOLLARO**
**JOSEPH ANTHONY CAVALLO,**
**MARGARET ANNE CHIASSON,**
**a/k/a "Meganne Chiasson,"**
**JAMES DONALD ENGIMANN,**
**BENJAMIN CLARK HEATH,**
**ANTONIO JOHN GOUSGOUNIS, and**
**CHRISTOPHER MARGAIT,**

did knowingly combine, conspire, confederate, and agree with each other and with persons known and unknown to the Grand Jury to commit offenses against the United States, that is:

(a) to knowingly engage in monetary transactions affecting interstate commerce by, through, and to a financial institution, in criminally derived property of a value greater than

14

$10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957; and

(b) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 4
(Laundering of Monetary Instruments – 18 U.S.C. § 1956(a)(1)(B)(i)

1.      Paragraphs 1 through 8, 12, 16, and 26 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about May 23, 2016, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

**JAMES DONALD ENGIMANN,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, that is, issuing a check for $4,000 drawn on the Rx Connections Citibank account ending in 2068, made payable to Capital Advisor Group, which transaction involved the

proceeds of a specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

It is further alleged that the specified unlawful activity is wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNTS 5 - 6
(Laundering of Monetary Instruments – 18 U.S.C. § 1956(a)(1)(B)(i))

1.      Paragraphs 1 through 8, 13, 15, and 22 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates listed below in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**ANTONIO JOHN GOUSGOUNIS,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, specifically:

| Count | Approximate Date | Financial Transactions |
|-------|------------------|------------------------|
| 5 | October 16, 2015 | Caused a wire transaction of $2,000 from Bank of America account ending in 8873 to Loveland Enterprises account ending in 1117 at Wells Fargo Bank N.A. |
| 6 | February 29, 2016 | Caused a wire transaction of $1,000 from Bank of America account ending in 8873 to Loveland Enterprises account ending in 7980 at Wells Fargo Bank N.A. |

It is further alleged that the specified unlawful activity was wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1343 and 1349.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 7 - 8
### (Laundering of Monetary Instruments – 18 U.S.C. § 1957(a))

1.      Paragraphs 1 through 8, 11 and 19 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or around the dates listed below, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

**MARK LOUIS VOLLARO,**

did knowingly engage in monetary transactions affecting interstate commerce by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of specified unlawful activity, as more specifically described below:

| Count | Approximate Date | Monetary Transaction |
|-------|------------------|----------------------|
| 7 | October 29, 2015 | Caused a wire transfer of $20,000 from Citibank account in the name of Complete Healthcare Concierge ending in 2081 to himself, Mark Louis Vollaro, at Citibank account ending in 2569 |
| 8 | December 24, 2015 | Caused a wire transfer of $20,000 from Citibank account in the name of Complete Healthcare Concierge ending in 2081 to himself, Mark Louis Vollaro, at Citibank account ending in 2569 |

It is further alleged that the specified unlawful activity was wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349.

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 9
(Conspiracy to Defraud the United States and to Pay and
Receive Health Care Kickbacks – 18 U.S.C. § 371)

1.    Paragraphs 1 through 16, 18, 22, 23, 26, and 27 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.    From in or around January 2014, through on or about May 25, 2016, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**LUIS GARCIA,**
**MARGARET ANNE CHIASSON,**
**a/k/a "Meganne Chiasson,"**
**JAMES DONALD ENGIMANN,**
**ANTONIO JOHN GOUSGOUNIS, and**
**CHRISTOPHER MARGAIT,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, and with Mark Louis Vollaro, Anthony Joseph Loveland, Robert Charles Clark, Jason Todd Faley, Joseph Anthony Cavallo, Benjamin

Clark Heath and others known and unknown to the Grand Jury, to defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Defense in its administration and oversight of the Tricare program, in violation of Title 18, United States Code, Section 371, and to commit offenses against the United States, that is:

     a.     to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Tricare; and

     b.     to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Tricare.

### **Purpose of the Conspiracy**

     3.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes in return for referring Tricare beneficiaries and their prescriptions to various specified participating compounding pharmacies; (b) offering and paying kickbacks and bribes to prescribers in exchange for ordering and prescribing compounded medications for Tricare beneficiaries at various specified

19

participating compounding pharmacies; (c) submitting and causing the submission of false and fraudulent claims to Tricare for compounded medications for Tricare beneficiaries; (d) concealing the kickbacks, referrals, and fraudulent claims; and (e) diverting fraud proceeds, kickbacks, and bribes for their personal use, the use and benefit of others, and to further the scheme.

### **Manner and Means of the Conspiracy**

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.    **LUIS GARCIA, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," JAMES DONALD ENGIMANN, ANTONIO JOHN GOUSGOUNIS, CHRISTOPHER MARGAIT,** Mark Louis Vollaro, Anthony Joseph Loveland, Robert Charles Clark, Jason Todd Faley, Joseph Anthony Cavallo, Benjamin Clark Heath, and their co-conspirators falsely and fraudulently agreed that USA Healthcare or Complete Healthcare Concierge would pay or receive a percentage of the profits paid to the pharmacies for Tricare beneficiaries referred by USA Healthcare or Complete Healthcare Concierge.

5.    **LUIS GARCIA, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," JAMES DONALD ENGIMANN, ANTONIO JOHN GOUSGOUNIS, CHRISTOPHER MARGAIT,** Mark Louis Vollaro, Anthony Joseph Loveland, Robert Charles Clark, Jason Todd Faley, Joseph Anthony Cavallo, Benjamin Clark Heath, and their co-conspirators paid the telemedicine companies for prescriptions from medical professionals who had no prior relationship with the patients and who had approved preprinted prescriptions for expensive and medically unnecessary drugs for Tricare beneficiaries.   These false and fraudulent prescriptions resulted in the submission of false and fraudulent claims from pharmacies to Tricare.

6.    **MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," JAMES DONALD ENGIMANN, ANTONIO JOHN GOUSGOUNIS, CHRISTOPHER MARGAIT** created or participated in the management of shell companies which received payments from the pharmacies or their co-conspirators companies, and then forwarded the proceeds to their co-conspirators in order to conceal that the co-conspirators were receiving a portion of the Tricare funds.

7.    **LUIS GARCIA, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," JAMES DONALD ENGIMAN, ANTONIO JOHN GOUSGOUNIS, CHRISTOPHER MARGAIT** and their co-conspirators submitted, and caused the pharmacies to submit, false and fraudulent claims to Tricare for unnecessary compounded medications procured as a result of kickbacks and other illicit incentives, designed and formulated for maximum reimbursement by Tricare without regard to medical necessity or therapeutic value, and not properly prescribed by a licensed medical professional with a legitimate physician-patient relationship.

8.    **LUIS GARCIA, MARGARET ANNE CHIASSON a/k/a "Meganne Chiasson," JAMES DONALD ENGIMANN, ANTONIO JOHN GOUSGOUNIS, CHRISTOPHER MARGAIT** and their co-conspirators used the proceeds of the conspiracy to benefit themselves and others, and to further the scheme.

**Overt Acts**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.      On or about January 2, 2015, **LUIS GARCIA** wrote a check in the amount of $1,302.00 to CHC to pay CHC its 10% share of the adjudicated prescriptions.

2.      On or about March 11, 2015, **MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson,"** sent a text message to a co-conspirator which stated, " Got jakes email … thanks for dealing with that … although my percent was 30 I'll take 25 lol can I come pick up the check tomorrow?"

3.      On or about April 1, 2015, **JAMES DONALD ENGIMANN** made a series of wire transfers of monies to the accounts of the companies controlled by his co-conspirators, including two transfers to CHC for $15,090 and $71,250; a transfer to RX Health Services for $36,250; and a transfer of $25,000 to TJM Holdings.

4.      On or about April 8, 2015, **ANTONIO JOHN GOUSGOUNIS** wrote kickback checks, to co-defendant Joseph Cavallo for $6,500 and to Loveland Enterprises (owned and operated by co-defendant Anthony Loveland) for $5,000.

5.      On or about July 1, 2015, **CHRISTOPHER MARGAIT** received a payment of $14,324 from a pharmacy as a kickback payment for the prescriptions that had been paid by the Insurance Plans, including Tricare.

6.      On or about May 25, 2016, **LUIS GARCIA, MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson," JAMES DONALD ENGIMANN, ANTONIO JOHN GOUSGOUNIS, CHRISTOPHER MARGAIT,** Mark Louis Vollaro, Anthony Joseph Loveland, Robert Charles Clark, Jason Todd Faley, Joseph Anthony Cavallo, Benjamin Clark Heath, and other co-conspirators caused Tricare to issue a payment for a Tricare beneficiary to a specific pharmacy in payment for medically unnecessary prescription drugs.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1.     The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which any of the defendants, **MARK LOUIS VOLLARO,  ANTHONY JOSEPH LOVELAND, LUIS GARCIA, ROBERT CHARLES CLARK, JASON TODD FALEY, JOSEPH ANTHONY CAVALLO, MARGARET ANNE CHIASSON, a/k/a "Meganne Chiasson," JAMES DONALD ENGIMANN, BENJAMIN CLARK HEATH,  ANTONIO JOHN GOUSGOUNIS, and CHRISTOPHER MARGAIT**, have an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Sections 371 or 1349, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3.     Upon conviction of a violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i), 1956(h), or 1957 as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

23

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(a)(7) and Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

CYNTHIA R. WOOD
ASSISTANT U.S. ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

MARK LOUIS VOLLARO, et al.,

_____ Defendant. _____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

Court Division: (Select One)

☐ Miami   ☐ Key West   ☑ FTL
☐ WPB    ☐ FTP

New defendant(s)  ☐ Yes  ☐ No
Number of new defendants  _____
Total number of counts  _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **No** _____
   List language and/or dialect _____

4. This case will take **45** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I    0 to 5 days  ☐
   II   6 to 10 days  ☐
   III  11 to 20 days  ☐
   IV   21 to 60 days  ☑
   V    61 days and over  ☐

   (Check only one)
   Petty  ☐
   Minor  ☐
   Misdemeanor  ☐
   Felony  ☑

6. Has this case previously been filed in this District Court? (Yes or No) **Yes** _____
   If yes: Judge **Beth Bloom** _____ Case No. **20-cr-60104** _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No** _____
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) _____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No** _____

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No** _____

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **Yes** _____

_Cynthia R. Wood_
Cynthia R. Wood
Assistant United States Attorney
Court ID No.    A5501329

REV 3/19/21

*Penalty Sheet(s) attached

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>MARK LOUIS VOLLARO</u>          **Case No:** _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Counts:  7 - 8

<u>Laundering of Monetary Instruments</u>

<u>18 U.S.C. § 1957</u>

**\*Max. Penalty:** Ten (10) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Counts:

**\*Max. Penalty:**

Counts:

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: ANTHONY JOSEPH LOVELAND          **Case No**: _____

Counts: 1-2

Conspiracy to Commit Wire Fraud

18 U.S.C. § 1349

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

    **\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>LUIS GARCIA</u>                **Case No**: _____

Count: 1

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 9

<u>Conspiracy to Defraud the United States and to Pay and Receive Kickbacks</u>

<u>18 U.S.C. § 371</u>

**\*Max. Penalty:** Five (5) years' imprisonment; one (1) year supervised release; $250,000

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

        \*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>ROBERT CHARLES CLARK</u>          **Case No**: _____

Count: 1

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: JASON TODD FALEY          **Case No**: _____

Counts: 1-2

Conspiracy to Commit Wire Fraud

18 U.S.C. § 1349

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>JOSEPH ANTHONY CAVALLO</u>                Case No: _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>MARGARET ANNE CHIASSON</u>          **Case No**: _____

Counts: 1-2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count: 9

<u>Conspiracy to Defraud the United States and to Pay and Receive Kickbacks</u>

<u>18 U.S.C. § 371</u>

**\*Max. Penalty:** Five (5) years' imprisonment; one (1) year supervised release; $250,000

Count:

**\*Max. Penalty:**

Count:

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>JAMES DONALD ENGIMANN</u>                    **Case No**: _____

Count: 2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:   4

<u>Laundering of Monetary Instruments</u>

<u>18 U.S.C. § 1956(a)(1)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count: 9

<u>Conspiracy to Defraud the United States and to Pay and Receive Kickbacks</u>

<u>18 U.S.C. § 371</u>

**\*Max. Penalty:** Five (5) years' imprisonment; one (1) year supervised release; $250,000.

Count:

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>BENJAMIN CLARK HEATH</u>            **Case No**: _____

Count: 2

<u>Conspiracy to Commit Wire Fraud</u>

<u>18 U.S.C. § 1349</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

<u>Conspiracy to Launder Monetary Instruments</u>

<u>18 U.S.C. § 1956(h)</u>

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**

  \*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANTONIO JOHN GOUSGOUNIS          **Case No**: _____

Count: 2

Conspiracy to Commit Wire Fraud

18 U.S.C. § 1349

**\* Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

Conspiracy to Launder Monetary Instruments

18 U.S.C. § 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Counts:  5 - 6

Laundering of Monetary Instruments

18 U.S.C. § 1956(a)(1)

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count: 9

Conspiracy to Defraud the United States and to Pay and Receive Kickbacks

18 U.S.C. § 371

**\*Max. Penalty:** Five (5) years' imprisonment; one (1) year supervised release; $250,000.

Count:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: CHRISTOPHER MARGAIT          **Case No**: _____

Count: 2

Conspiracy to Commit Wire Fraud

18 U.S.C. § 1349

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine.

Count: 3

Conspiracy to Launder Monetary Instruments

18 U.S.C. § 1956(h)

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $500,000 fine.

Count: 9

Conspiracy to Defraud the United States and to Pay and Receive Kickbacks

18 U.S.C. § 371

**\*Max. Penalty:** Five (5) years' imprisonment; one (1) year supervised release; $250,000.

Count:

_____

_____

**\*Max. Penalty:**

Count:

_____

_____

**\*Max. Penalty:**
     \*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.